**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Ann Cullison, | No. CV 11-01179-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Okoneski, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss Second Amended Complaint as to Defendants Okoneski and Statewide; Motion of Defendant, Edward T. Bonner, to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Procedure 12(b)(6); and Fidelity, Haglund and Loucks' Motion to Dismiss. (Docs. 29, 35, 39.) Plaintiff has filed responses to all three motions to dismiss. (Docs. 43, 46, 54.) Defendants Okoneski and Statewide and Defendants Fidelity, Haglund and Loucks have filed replies in support of their motions to dismiss. (Docs. 52, 57.) Defendant Edward T. Bonner has not filed a reply in support of his motion to dismiss, and the time has passed for doing so.

**I.    Procedural Background**

The six moving Defendants are Gerald J. Okoneski ("Okoneski"), Statewide Foreclosure Services ("Statewide"), Edward T. Bonner ("Edward Bonner"), Wanda S. Loucks ("Loucks"), Karen Haglund ("Haglund"), and Fidelity National Title Insurance

Company ("Fidelity"). The Second Amended Complaint also names as Defendants the spouses of Okoneski, Edward Bonner, Loucks, and Haglund, but only Okoneski's and Haglund's spouses were served.

The Second Amended Complaint was filed August 30, 2011. The record does not show proof of service on Defendants Dan J. Bonner and Kathleen S. Bonner; The Money Mart Mortgage, LLC, dba Money Mart; The Okoneski Trust, a Trust dated 10/23/89; Title Management Agency of Arizona, LLC; Sunstate Title Agency, LLC; Charles Nichols and Jane Doe Nichols; Black Corporation I, mortgage bonding company for Dan Bonner and/or Money Mart; Black Corporation II, notary bonding company for Haglund; and Black Corporation III, notary bonding company for Nichols. Claims against those parties and the unserved spouses of Edward Bonner and Loucks will be dismissed for lack of service.

The Second Amended Complaint alleges ten claims for relief:[1]

1. Fraud and Misrepresentation (against Okoneski, Edward Bonner, Loucks, Haglund, and Fidelity)
2. Violation of Statute (against Loucks, Haglund, and Fidelity regarding notaries public)
3. Violation of Arizona Consumer Fraud Act (against Okoneski)
4. Violation of the Truth in Lending Act (against Okoneski)
5. Violation of Real Estate Settlement Procedure Act (against Okoneski and Statewide)
6. Wrongful Forfeiture; Quiet Title (against Okoneski and Statewide)
7. Violation of Statute (not alleged against any of the moving Defendants)
8. Breach of Contract (against Okoneski and Statewide)

---

[1] At times, the Second Amended Complaint uses the term "Bonner" without expressly identifying whether it refers to Dan Bonner or Edward Bonner. In the titles for the claims for relief, "Bonner" is interpreted as referring to Dan Bonner.

- 2 -

1      9.    Usury (against Okoneski)

2      10.    Violation of A.R.S. § 13-2301 *et seq.* (against Okoneski, Edward
3      Bonner, Loucks, Haglund, and Fidelity)

## I. Legal Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Generally, material beyond the complaint may not be considered in deciding a Rule 12(b)(6) motion. However, evidence on which the complaint "necessarily relies" may be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## II. Facts Assumed to Be True

Before August 2006, Plaintiff owned a home in Phoenix, Arizona, free and clear of any mortgage or loan encumbrance. In 2000 and 2004, Plaintiff had incurred three judgments for criminal restitution in the amounts of $1,600.00, $1,770.00, and $2,010.00, which became judgment liens on the property under state law. She wanted to procure a loan against her home to pay off those judgment liens.

- 3 -

Dan Bonner represented to Plaintiff that he worked for and on behalf of The Money Mart Mortgage, LLC, dba Money Mart, a licensed mortgage broker, and that he could arrange mortgage funding to not only pay off the judgment liens, but also to give her cash back from the loan. Dan Bonner told Plaintiff that she did not have adequate credit to borrow a credit-based loan. He arranged for a mortgage loan of $23,875 to be secured by a note and deed of trust on Plaintiff's home for which the lenders were Dan Bonner's grandparents, Edward T. Bonner and Lorrain Bonner. The loan, which Dan Bonner recommended, required payments that Plaintiff was unable to make because she had no regular job or source of income at the time the loan was made. Within eight months, the balance due rose from the original principal amount of $23,875 to $26,553, even after Plaintiff made four or five payments. The terms and conditions of the loan were never explained to Plaintiff.

SunState Title Agency, LLC, served as the title company for the loan, which closed on August 1, 2006. The settlement statement for this loan shows payment of $7,412.85 in settlement charges, which included payment of $1,770.00 to the State of Arizona for a judgment, and payment of cash to Plaintiff in the amount of $16,432.15. Plaintiff thought that all of her judgment liens would be paid off and that casualty insurance on the home would be paid from the net loan proceeds, but the settlement statement indicates payment of only one judgment and a premium for insurance covering the loan, not the home. Further, the judgment lien of $1,770.00 was not paid during the closing of the August 2006 loan.

In March 2007, Plaintiff had fallen behind on payments for the first loan and was induced by Dan Bonner to take a second loan to pay off the first loan. The second loan, in the amount of $52,850, closed on March 23, 2007, at the offices of Title Management Agency of Arizona, LLC. The second loan was funded by Dan Bonner's wife, Kathleen S. Bonner. It paid $26,553.34 for the first loan, $7,050.96 in settlement charges, and $19,245.70 in cash to Plaintiff. The settlement statement shows payment of $763.48 to the Superior Court of Arizona for a judgment, but Plaintiff believes it still has not been

- 4 -

1  paid.  Plaintiff was not provided with disclosures regarding the true cost of the loan and
2  any right of rescission.  Again, the loan required payments that Plaintiff was unable to
3  make because she had no regular job or source of income at the time the loan was made.

4        The Deed of Release and Full Reconveyance recorded April 13, 2007, states that
5  the indebtedness of the first loan secured by a deed of trust has been fully paid.  It is
6  signed by Defendant Wanda S. Loucks, Vice President, Fidelity National Title Insurance
7  Company, and notarized by Defendant Karen Haglund, Notary Public.  Loucks'
8  signatures on two documents appear distinctively different.  Haglund's signature on a
9  receipt made in Plaintiff's presence appears slightly different than the ones notarizing
10 Loucks' signatures.  During the execution of the second loan, Dan Bonner claimed to
11 have lost the original documents and had Plaintiff endorse the loan documents in blank.

12       In May 2007, Dan Bonner arranged for a third loan to Plaintiff in the amount of
13 $74,450 from Defendants Okoneski and their trust.  The title and escrow company for the
14 third loan was Title Management Agency of Arizona, LLC.  The third loan increased
15 Plaintiff's monthly loan payment by approximately $400.  It paid $54,370.10 for the
16 second loan, $9,295.76 in settlement charges, and $10,784.14 in cash to Plaintiff.  The
17 settlement charges included $4,892.28 for advance payments for July through November
18 2007.  The settlement statement shows payment of $763.48 to the Superior Court of
19 Arizona for a judgment, but Plaintiff believes it still has not been paid.  Plaintiff was not
20 provided with disclosures regarding the true cost of the loan and any right of rescission
21 and was not informed that the third loan was an interest-only loan.  Again, the loan
22 required payments that Plaintiff was unable to make because she had no regular job or
23 source of income at the time the loan was made.

24       Subsequently, Dan Bonner and Okoneski induced Plaintiff to put a junior position
25 fourth mortgage loan on the home in the amount of $25,000.  The fourth loan closed on
26 October 12, 2007, at the offices of Title Management Agency of Arizona, LLC.  It paid
27 $8,161.67 as prepaid payments for the third loan for December 2007 through June 2008
28 and on the fourth loan for the same period.  It paid $12,253.18 in cash to Plaintiff.

Plaintiff was not provided with disclosures regarding the true cost of the loan and any right of rescission. Again, the loan required payments that Plaintiff was unable to make because she had no regular job or source of income at the time the loan was made.

Plaintiff also was not informed that the fourth loan required a balloon payment due at the end of its term and failure to make the balloon payment would result in loss of her home. The end of the term was October 12, 2012.

On June 2, 2008, Defendant Statewide Foreclosure Services recorded a notice of trustee's sale pursuant to the power of sale under the deed of trust securing the fourth loan. Subsequent notices were recorded in 2008, 2009, 2010, and 2011. Each time Plaintiff paid all the monies needed and demanded by Okoneski and Statewide to cure the default, except for the last time. From October 30, 2008, through July 2010, Plaintiff paid to Statewide and/or Okoneski almost $42,000, plus other monies. On June 20, 2011, Plaintiff's home was sold at public auction to Okoneski, Trustee under the Okoneski Trust Dated 10/23/89, for $29,816.51.

Plaintiff initiated this lawsuit on June 15, 2011. She filed a Second Amended Complaint on August 30, 2011.

**III.  Analysis**

    **A.  A.R.S. § 33-807(E) Requires that Trustee Statewide Foreclosure Services Be Dismissed.**

The Second Amended Complaint alleges three claims against Statewide, counts 5, 6, and 8: Violation of Real Estate Settlement Procedure Act ("RESPA"), Wrongful Forfeiture/Quiet Title, and Breach of Contract. Plaintiff alleges that Statewide breached its fiduciary duty under the Arizona Deed of Trust Act to determine that there was a default before noticing a trustee's sale, no default existed in fact, and Statewide failed to credit Plaintiff for the monies paid in redemption.[2] However, the Second Amended Complaint also expressly alleges, "Okoneski and defendant Statewide Foreclosure

---

[2] The RESPA claim does not appear to apply to Statewide.

- 6 -

commenced a series of trustee's sales, each time redeemed by plaintiff (except for the last one) . . . ." As alleged, therefore, a default did exist at the time of the June 2, 2011 trustee's sale.

Further, A.R.S. § 33-807(E) provides:

> The trustee need only be joined as a party in legal actions pertaining to a breach of the trustee's obligation under this chapter or under the deed of trust. Any order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the trust deed or by this chapter. If the trustee is joined as a party in any other action, the trustee is entitled to be immediately dismissed and to recover costs and reasonable attorney fees from the person joining the trustee.

Arizona statutes empower a trustee to sell the trust property in the statutorily prescribed manner "after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security, or a breach or default of the trust deed," but the beneficiary may choose a judicial foreclosure rather than a trustee's sale. A.R.S. § 33-807(A). A trustee must comply with specific requirements for giving notice of a trustee's sale and conducting a trustee's sale. A.R.S. § 33-808. A trustee must not delegate certain duties, such as preparing and executing the notice of trustee sale, cancellation of notice of sale, and the trustee's deed upon sale. A.R.S. § 33-803.01(A). A trustee must provide upon request by the trustor a good faith estimate of the sums that appear necessary to reinstate a trust deed and record notice of cancellation of a sale if the beneficiary notifies the trustee that the trust deed has been reinstated. A.R.S. § 33-813. But Plaintiff has not identified any statute or provision of the deed of trust that requires a trustee to independently investigate whether the trustor is in breach or default of the deed of trust rather than act upon the instructions of the trust beneficiary. And, regardless, Plaintiff alleged that she failed to cure her last default.

Therefore, Plaintiff's claims against Statewide do not pertain to a breach of the trustee's obligation under the Arizona Deed of Trust Act or under the deed of trust, and A.R.S. § 33-807(E) requires that "the trustee . . . be immediately dismissed and [] recover costs and reasonable attorney fees from the person joining the trustee."

- 7 -

### B. Plaintiff's Federal Law Claims and State Law Fraud Claims Are Untimely.

Plaintiff filed her initial complaint on June 15, 2011. She filed her Second Amended Complaint on August 30, 2011.

#### 1. Federal Law Claims

Any private action for violation of the Truth in Lending Act ("TILA") must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Second Amended Complaint alleges that the violations occurred with respect to each of the four loans, which the last of which closed on October 12, 2007. Thus, any claim for a TILA violation filed after October 12, 2008, is time-barred.

Any action for violation of § 2605 (servicing of federally related mortgage loans and administration of escrow accounts) of the Real Estate Settlement Procedure Act ("RESPA") must be brought within three years of the occurrence of the violation. 12 U.S.C. §§ 2614, 2605. Any action for violation of § 2607 (prohibition against kickbacks or unearned fees) or § 2608 (liability of seller) must be brought within one year of the occurrence of the violation. 12 U.S.C. §§ 2614, 2607, 2608. The Second Amended Complaint alleges that monies Plaintiff paid were not properly credited to her account, she received no accounting, and she received no notice of the transfer of an equitable interest in the notes signed by her. The Second Amended Complaint does not allege that any of the four loans were federally related or that any equitable interest was transferred, and it does not appear that RESPA applies to the other alleged omissions. But even if the Second Amended Complaint did adequately plead a RESPA claim, such a violation would have occurred by October 12, 2007, and any claim filed after October 12, 2010, is time-barred.

An action for usurious interest under 12 U.S.C. § 86 must be brought within two years from the time the usurious transaction occurred. Because the last loan transaction closed on October 12, 2007, any usury claim filed after October 12, 2009, is time-barred.

Therefore, all of Plaintiff's federal claims for relief are time-barred.

- 8 -

### 2. State Law Fraud Claims

The limitations period under Arizona law for fraud or mistake is three years from "the discovery by the aggrieved party of the facts constituting the fraud or mistake." A.R.S. § 12-543(3). A fraud claim accrues when a plaintiff "should have known such facts that would have prompted a reasonable person to investigate and discover the fraud." *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 264, 266, 678 P.2d 449, 451 (Ct. App. 1983).

The limitations period for violation of the Arizona Consumer Fraud Act is one year because a consumer fraud claim is created by statute. A.R.S. § 12-541(5); *Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (Ct. App. 1994). The statute of limitations for both consumer fraud and common law fraud begins to run "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Alaface*, 181 Ariz. at 591, 892 P.2d at 1380.

Plaintiff alleges that she was induced to enter into four loan transactions, the last of which closed on October 12, 2007. She further alleges that the loans were fraudulent because at the time of the loan transactions she had no regular job or source of income and therefore could not make the required transactions. She knew her ability to repay the loans at the time each of the loans closed, and therefore her claims of fraud based on that allegation accrued no later than October 12, 2007.

Further, Plaintiff alleges that on June 2, 2008, when the first notice of trustee's sale was recorded, there was no material default under the terms or conditions of any of the loans. She does not allege that she did not receive notice of the trustee's sale; in fact, she alleges that from 2008 through 2011, she paid monies to cure defaults. Thus, by June 2, 2008, at the latest, she discovered or with reasonable diligence could have discovered the alleged fraud and knew that she had been harmed as a result. She now contends that she chose to wait to file suit until she lost her property on June 20, 2011, "the actionable date for a wrongful forfeiture action," but also states that she actually filed suit on June 15, 2011, before she lost her property. Regardless of when she accrued damages for any

1 other claim, she discovered or with reasonable diligence could have discovered fraud
2 related to any of the four loan transactions.
3     Therefore, Plaintiff's common law fraud and Arizona Consumer Fraud Act claims
4 are time-barred.

5     **C.**     **Plaintiff Cannot Assert a Claim for Violation of A.R.S. § 13-2301 *et seq*.**
6     The Second Amended Complaint alleges a claim under Arizona criminal statutes
7 for forgery and other wrongful acts. Plaintiff does not have a private right of action to
8 enforce Arizona criminal statutes.

9 **IV.**     **Supplemental Jurisdiction**
10     The Second Amended Complaint alleges federal question jurisdiction over some
11 claims and supplemental jurisdiction over the state law claims. If a district court has
12 original jurisdiction in a civil action, it has supplemental jurisdiction "over all other
13 claims that are so related to claims in the action within such original jurisdiction that they
14 form part of the same case or controversy." 28 U.S.C. § 1367(a). Finding Plaintiff's
15 state law claims to form part of the same case or controversy as her federal law claims,
16 the Court has exercised supplemental jurisdiction over the state law claims and will
17 dismiss some of those with prejudice. Upon finding that all of Plaintiff's federal law
18 claims are time barred, however, the Court will exercise its discretion under 28 U.S.C.
19 § 1367(c)(3) to decline supplemental jurisdiction when it has dismissed all claims over
20 which it has original jurisdiction.

21     IT IS THEREFORE ORDERED that all claims against Defendants Dan J. Bonner
22 and Kathleen S. Bonner; The Money Mart Mortgage, LLC, dba Money Mart; The
23 Okoneski Trust, a Trust dated 10/23/89; Title Management Agency of Arizona, LLC;
24 Sunstate Title Agency, LLC; Charles Nichols and Jane Doe Nichols; Black Corporation I,
25 mortgage bonding company for Dan Bonner and/or Money Mart; Black Corporation II,
26 notary bonding company for Haglund; and Black Corporation III, notary bonding
27 company for Nichols; John Doe Loucks; and Lorrain Bonner are dismissed without
28 prejudice for lack of service.

1  IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Second
2 Amended Complaint as to Defendants Okoneski and Statewide (Doc. 29); Motion of
3 Defendant, Edward T. Bonner, to Dismiss Plaintiff's Second Amended Complaint
4 Pursuant to Federal Rule of Procedure 12(b)(6) (Doc. 35); and Fidelity, Haglund and
5 Loucks' Motion to Dismiss (Doc. 39) are granted.

6  IT IS FURTHER ORDERED that all of Plaintiff's claims against Defendant
7 Statewide Foreclosure Services are dismissed with prejudice.  Defendant Statewide
8 Foreclosure Services is entitled to recover costs and reasonable attorney fees pursuant to
9 A.R.S. § 33-807(E) and may submit an application pursuant to Fed. R. Civ. P. 54(d) and
10 LRCiv 54.2.

11  IT IS FURTHER ORDERED that all of Plaintiff's claims against Edward T.
12 Bonner are dismissed with prejudice.

13  IT IS FURTHER ORDERED that Plaintiff's claims against Gerald J. Okoneski
14 and Jane Doe Okoneski for fraud and misrepresentation, violation of the Arizona
15 Consumer Fraud Act, violation of the Truth in Lending Act, violation of the Real Estate
16 Settlement Procedure Act, usury, and violation of A.R.S. § 13-2301 *et seq.* are dismissed
17 with prejudice.  Plaintiff's claims against Gerald J. Okoneski and Jane Doe Okoneski for
18 wrongful forfeiture/quiet title and breach of contract are dismissed without prejudice.

19  IT IS FURTHER ORDERED that Plaintiff's claims against Wanda S. Loucks,
20 Karen Haglund and John Doe Haglund, and Fidelity National Title Insurance Company
21 for fraud and misrepresentation and violation of A.R.S. § 13-2301 *et seq.* are dismissed
22 with prejudice.  Plaintiff's claim against Wanda S. Loucks, Karen Haglund and John Doe
23 Haglund, and Fidelity National Title Insurance Company for  violation of a notaries
24 public statute is dismissed without prejudice.

25 ///
26 ///
27 ///
28 ///

IT IS FURTHER ORDERED that the Clerk enter judgment in accordance with this order.  The Clerk shall terminate this case.

DATED this 6th day of April, 2012.

*Neil V. Wake*
Neil V. Wake
United States District Judge